UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                        ORDER

vs.                                    17-CR-6138-CJS-1
                                          19-CV-6668 CJS

DELSO FERREIRA,
                        Defendant.

_____

## INTRODUCTION

Now before the Court is a motion (ECF No. 26) by Delso Ferreira ("Defendant") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. As part of that application, Defendant alleges that the attorneys who represented him in connection with his decision to plead guilty pursuant to a Plea Agreement provided ineffective assistance of counsel, including by acting under a conflict of interest. Defendant alleges that he was prejudiced in that regard, since he is actually innocent of one of the charges to which he pled guilty. For the reasons discussed below, the motion is denied.

## BACKGROUND

On May 2, 2017, Christopher Mahaffy, a Special Agent with the U.S. Drug Enforcement Administration, executed a sworn affidavit in support of a criminal complaint against Defendant, stating as follows:

5. On March 7, 2017, agents from the DEA Rochester Resident Office executed a New York State search warrant at the residence of FERREIRA,

located at 20 Schum Lane, Rochester, New York (hereafter "the residence") pursuant to a joint investigation with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Rochester Resident Office.

6. On March 7, 2017, at approximately 6:55 p.m., agents from the Rochester RO approached the front entrance of 20 Schum Lane, where they knocked and announced their presence. FERREIRA responded and opened the front door for the agents. SA Sabatino Smith and ATF Task Force Officer ("TFO") Timothy Pearce took FERREIRA into temporary custody without incident and escorted him away from the residence.  FERREIRA was handcuffed and searched for weapons, which yielded negative results and he was placed in the backseat of TFO Pearce's vehicle. The residence search was then conducted.

7. Among the items of evidentiary value seized during the search were:

a. a total of $31,892 in U.S. currency located on FERREIRA's person, in a drawer in the master bedroom, and a safe in the closet of the master bedroom.

b. an unloaded Smith & Wesson .22 semi-auto pistol located in a red bag inside the garage along with a magazine containing (8) eight rounds.

c. an unloaded Hi Point 9mm semi-auto pistol located in a red bag inside the garage along with a magazine containing (8) eight rounds.

d. an unloaded Para Ordinance 45 caliber semi-auto pistol located in a red bag inside the garage along with a magazine containing (7) seven rounds.

e. an unloaded Ruger .357 caliber revolver located in a red bag inside the garage.

f. an unloaded Aero Precision assault-style rifle located in a black bag in the basement behind a bar area along with (2) two empty magazines.

7. During the search of the residence, DEA Resident Agent-in-Charge

2

("RAC") Matthew Ramarge advised FERREIRA of his Miranda rights utilizing a DEA Form 13A card. FERREIRA answered RAC Ramarge that he understood his rights and he wanted to talk with agents. FERREIRA stated that there w[ere] no drugs in his residence, but there was cocaine located in the center console of the Chevrolet Equinox parked in his driveway. FERREIRA remained cooperative and signed a Consent to Search Form for two vehicles located at the residence, a Chevrolet Equinox with NY Tag # 7114179, a dealer tag registered to Bob Johnson Nissan,[1] 4000 West Ridge Road, Rochester, NY, and a Nissan SUV with NY Tag # GVT-9722, registered to FERREIRA at the residence. It should be noted that FERREIRA had been observed utilizing dealer vehicles with NY Tag # 7114179 during multiple controlled purchases. After FERREIRA signed the consent form, agents executed a search of both vehicles.

8. Among the items of evidentiary value seized during the consent search of the Chevy Equinox were:

  a. a Ziploc baggie containing approximately 69 grams of suspected crack cocaine located in the glove compartment. SA James Schmitz field-tested Exhibit 6 with a positive result for cocaine, as witnessed by your affiant.

  b. a black electronic scale located in the glove compartment.

9. On March 7, 2017, at approximately 7:24 p.m., SA Sabatino Smith and TFO Timothy Pearce interviewed FERREIRA at the DEA Rochester Resident Office. SA Smith advised FERREIRA that his rights had been read to him and he had agreed to talk with agents at his residence and FERREIRA acknowledged this fact. SA Smith then stated to FERREIRA that it was FERREIRA's choice to have the interview recorded and FERREIRA chose not to have the interview recorded. At this time, SA Smith turned off the video/audio recording device. The following is a summary of parts of the conversation with FERREIRA. SA Smith questioned FERREIRA as to where he purchased his cocaine from for distribution and FERREIRA replied he purchased it from several sources over the past nine months. SA Smith also questioned FERREIRA regarding the guns seized at his residence and FERREIRA stated they were his guns. FERREIRA explained to SA Smith that at least two handguns found in the red bag in his garage

---

[1] In addition to selling cocaine, Defendant was earning $90k to $100k as an automobile salesman. PSR (ECF No. 16) at p. 18.

were acquired by trading cocaine to an individual for these guns. Additionally, FERREIRA stated that the assault rifle found in his basement was obtained from an individual when FERREIRA forgave a $1,200 cocaine debt that the individual had with FERREIRA. At the conclusion of the interview, FERREIRA signed a Waiver of Speedy Arraignment Form, as witnessed by SA Smith and TFO Pearce and was released from custody.

ECF No. 1 at pp. 4-7.  The criminal complaint, filed on May 2, 2017, charged Defendant with violating 21 U.S.C. § § 841(a)(1) & 841(b)(1)(B), "knowing an unlawful possession with intent to distribute twenty-eight grams or more of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance."[2]

To defend against these charges, on or about May 22, 2017, Defendant retained defense attorney Joseph Damelio ("Damelio").  On June 16, 2017, Damelio wrote to the Honorable Marian W. Payson, United States Magistrate Judge ("Judge Payson"), and requested a 30-day adjournment of status conference that had been scheduled for June 19, 2017, to allow him time to meet with Defendant and review a proposed plea agreement that he had received from the Government.  Judge Payson granted the request and adjourned the matter to July 17, 2017.  On July 17, 2017, the parties requested a further adjournment and indicated that they were working on a possible resolution.

However, on August 28, 2017, Damelio notified Judge Payson that he had a conflict of interest and that Defendant would either retain a new attorney or ask for appointed counsel.  Judge Payson adjourned the matter to September 26, 2017.

On September 26, 2017, Damelio informed Judge Payson that Defendant had

---

[2] The Pre-sentence Investigation Report ("PSR") notes that on May 2, 2017, Defendant was scheduled to appear with his attorney at the Federal Building in Rochester to be polygraphed, but instead he fled to the Dominican Republic.  However, authorities in the Dominican Republic refused him entry and sent him back to the United States, whereupon he was arrested.

4

retained a new attorney, Teodoro Siguenza ("Siguenza"). In particular, the following exchange took place:

> THE COURT: Okay. Mr. Damelio, you said at the last court appearance that there was an issue with a potential conflict.

> MR. DAMELIO: Yes, your Honor. At this point I would ask the Court to relieve me as counsel. Teodoro Siguenza will be representing my client and I believe they just need to get in front of the District Judge for a plea.

> THE COURT: Mr. Sherman. [referring to Assistant United States Attorney Frank Sherman]

> MR. SHERMAN: Your Honor, I did speak to Mr. Siguenza last week. He did tell me that he's taking over the case. I sent him the proposed plea agreement and he is supposed to get back to me today so that we can schedule the matter in front of the district court.

> THE COURT: Okay. Mr. Ferreira, do you wish to be represented by Mr. Siguenza?

> [Defendant:] Yes, ma'am.

> THE COURT: Okay. And your understanding is that you worked out arrangements with him to retain him?

> [Defendant:] Yes, your Honor.

> THE COURT: Okay. Mr. Damelio, as soon as I receive something in writing from Mr. Siguenza indicating that he has been fully retained by Mr. Ferreira and would like to act as his attorney in this matter, then I will relieve you. But I'd like to have that in place before --

> MR. DAMELIO: Oh, sure, your Honor.

> THE COURT: -- I do that. So it sounds like the expectation that Mr. Ferreira will as soon as Mr. Siguenza is formally in the case will be prepared to enter a plea pursuant to an agreement.

> MR. SHERMAN: That's the plan, yes. Sometime in the next two weeks

probably.

THE COURT: Oh, that soon, okay. So, let me see. Today is the 26th. Why don't I put this on the calendar for October 13th, Friday the 13th, just for control purposes.

Transcript (ECF No. 36) at pp. 2-3.  At the conclusion of that appearance, Judge Payson granted the parties request for a speedy-trial clock exclusion in the interest of justice, stating:

> Joint request to exclude time in the interest of justice is granted. Time is excluded between today and October 13th under 18 U.S.C., Section 3161(h)(7) because I find the parties' interest and the public's interest in a speedy indictment and a speedy trial are outweighed by the parties' interest in having enough time for Mr. Ferreira to appear with his newly-retained counsel Mr. Siguenza before the district court for the purposes of entering a plea consistent with the terms of the agreement that he has apparently reached with the government, certainly before that to go over that plea agreement with new counsel if he hasn't already gone over it with Mr. Siguenza.

*Id*. at p. 4.

On October 13, 2017, Judge Payson made a minute entry on the docket, indicating that Siguenza had been retained, Damelio had been relieved as counsel, and the matter would be scheduled before the undersigned for a plea.

The undersigned subsequently scheduled an appearance on October 31, 2017, for a plea.  On that date, Defendant appeared before the undersigned with Siguenza, waived indictment and pled guilty to an Information pursuant to a Plea Agreement.  The two-count Information charged Defendant with violating 21 U.S.C. § § 841(a)(1) & b(1)(B) (knowingly, intentionally and unlawfully possessing with intent to distribute twenty-eight (28) grams or more of a mixture and substance containing cocaine base, a Schedule II controlled substance) and 18 U.S.C. § 924(c)(1)(A)(i) (knowingly and unlawfully

6

possessing a firearm in furtherance of drug trafficking crime).  The first count carried a mandatory minimum prison sentence of five years and maximum of forty years, and the second count carried a mandatory minimum of five years and a maximum of life imprisonment.

Defendant agreed, in the Plea Agreement, that on March 7, 2017, he knowingly possessed with intent to distribute 60.4 grams of cocaine base, and also knowingly possessed five different firearms, including an assault rifle that he "acquired using cocaine as payment."  In that regard, Defendant specifically agreed "that when an individual acquires a firearm using drugs as payment, he possesses that firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)."  Defendant and the Government agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that a 120-month term of imprisonment (the statutory mandatory minimum) was the appropriate sentence.  As part of the Plea Agreement, the Government agreed not to file an 851 Information with respect to Count 1 of the Information that would have increased Defendant's mandatory minimum sentence on Count 1 to ten years, and his overall mandatory minimum sentence to fifteen years.[3]  Additionally, Defendant agreed to give up his right to appeal or collaterally attack any component of a sentence of 120 months or less.

---

[3] If the Government had filed a Section 851 information concerning Defendant's prior conviction, in 2005, for Criminal Possession of a Controlled Substance in the First Degree, his mandatory minimum sentence on Count 1 would have increased to ten years instead of five, and his overall mandatory minimum sentence would have increased to fifteen years. *See*, PSR (ECF No. 16) at p. 15 ("Ferreira was given the benefit of the government not filing a Motion to Seek Enhanced Penalties pursuant to 21 USC § 851. Had this motion been filed, the defendant would have been facing a mandatory sentence of 10 years to life imprisonment on Count 1.").  According to the PSI, the circumstances of that 2005 prior conviction were that Defendant and four co-defendants were found in possession of more than four ounces of cocaine, scales, and two handguns, one of which had been reported stolen and one of which had a defaced serial number. PSR (ECF No.16) at p. 13.

During his plea, Defendant stated, under oath, the following facts about himself: Before deciding to plead guilty he had discussed with Siguenza the Government's case against him and what the result might be if he went to trial, and that based upon such discussion he believed it was in his best interest to plead guilty; he had read the Plea Agreement and reviewed it with Siguenza, and insofar as he had any questions, Siguenza had answered them; he had received sufficient time to speak with Siguenza before deciding to plead guilty; he was satisfied with Siguenza's advice and representation; he understood that that the maximum penalties on Counts 1 and 2 of the Information were forty years and life, respectively, and that any sentence on Count 2 had to run consecutively to any sentence on Count 1; he had discussed the U.S. Sentencing Guidelines with Siguenza, and understood that the sentencing range calculated by the Government and Siguenza under the advisory guidelines was 120 months, or ten years; he understood that by the terms of the Plea Agreement he and the Government were asking the Court to sentence him to 120 months; he understood the maximum statutory sentence he could receive was life plus forty years; he understood that if he was convicted after trial he could appeal, but agreed that as part of the Plea Agreement he was giving up his right to appeal or collaterally attack his sentence; he had discussed with Siguenza what it meant to waive indictment and agreed he was waiving the right to indictment, and, in particular,  that he "want[ed] to waive indictment because [he] want[ed] to get the benefits of the plea agreement that Mr. Siguenza ha[d] negotiated on [his] behalf"; he "fully agreed" with the contents of the Plea Agreement, and no promises or representations had been made to him other than what was contained in the agreement; he had signed the Plea Agreement voluntarily; he understood that he could have, if he

8

had wanted, not pleaded guilty and gone to trial, and if he could not have afforded an attorney the Court would have appointed one for him;  he agreed no one was forcing him to plead guilty, but, rather, he was pleading guilty because based on his conversations with Siguenza he believed that pleading guilty was his best option; he acknowledged that prior to being arrested he had been engaged in selling "ounces, quarter ounces, stuff like that," of crack cocaine at different locations; and, he agreed that he had obtained the assault rifle in payment for cocaine, and that by exchanging drugs for the firearm he had possessed the firearm in furtherance of drug trafficking.

On February 28, 2018, Defendant and Siguenza appeared before the undersigned for sentencing, and the Court sentenced Defendant to term of 60 months on each of the two counts of the Information, to run consecutively, for a total sentence of imprisonment of 120 months, as the parties had agreed in the Plea Agreement.  During sentencing, Siguenza observed that while he had not initially represented Defendant, he had represented him "at the plea phase and now at the sentencing phase," and Defendant indicated that he appreciated Siguenza's "efforts on his behalf."[4]  Defendant further indicated that he had "no good reasons" for getting involved in the instant criminal activity and took full responsibility for his actions.[5]  The Court advised Defendant that since it had sentenced him to 120 months as contemplated in the Plea Agreement, he had consented to give up his right to appeal or collaterally attack his sentence, as per that agreement.

Defendant did not file an appeal.  However, on August 16, 2019, approximately eighteen months after sentencing, Defendant, proceeding *pro se*, filed the subject motion

---

[4] Sentence Transcript at p. 7.
[5] Sentence Transcript at p. 7 ("Unfortunately, I made some bad choices and I'm here to pay for them today.").

(ECF No. 25) pursuant to 28 U.S.C. § 2255, requesting that the Court "vacate the conviction and sentence," "on the grounds that (1) both the Court and counsel denied him his right to appeal, (2) his guilty plea was the product of ineffective assistance of counsel, as he was actually innocent of the firearm charge, and (3) counsel labored under an actual conflict of interest."

In support of those claims, Defendant alleges that when he retained Damelio to defend him, Damelio was already representing an individual who was a cooperating witness against Defendant.  Defendant alleges that all relevant times, Damelio was aware of the conflict, but did not disclose it to Defendant or the Court, and nevertheless continued to represent Defendant until he had negotiated a plea agreement for Defendant.

Defendant also alleges that because of this conflict of interest, Damelio failed to move for dismissal of the action, based on the Government's failure to return an indictment within thirty days. *See*, Section 2255 Motion at p. 1 ("Despite the passage of thirty days following his arrest, no indictment was ever returned."); *see also*, ECF No. 33 at p. 2 ("Given counsel's simultaneous representation of the Defendant and Confidential Informant in this case, he was prohibited from waiving the Defendant's right to a speedy indictment under 18 U.S.C. 3161, and from securing a plea agreement and advising Defendant to enter a guilty [plea].").

Additionally, Defendant alleges that Damelio, in order to benefit his other client, failed to secure a more-favorable sentence for him. *See*, Section 2255 Motion at p. 4 ("[C]ounsel could have sought a resolution by which Defendant could have received a more favorable sentence based on information Defendant possessed about the

10

cooperating witness who Mr. Damelio simultaneously represented.  Of course, choosing that course of action would have proven troublesome for the cooperating witness – Mr. Damelio's other client.").  Although, as noted above, the Plea Agreement resulted in Defendant receiving the statutory mandatory minimum sentence.

Defendant indicates that once the plea agreement had been negotiated, Damelio informed the Honorable Marian W. Payson, United States Magistrate Judge ("Judge Payson"), that he had a potential conflict of interest and would need to withdraw as Defendant's attorney.  Defendant alleges that while it appears he retained Siguenza to represent him, Damelio actually retained Siguenza, without his prior approval.  Indeed, Defendant asserts that he "did not know that he had a choice to accept or not accept Mr. Siguenza as counsel,"[6] even though Siguenza was retained, as opposed to having been assigned by the Court.

Defendant further suggests that while Siguenza nominally appeared with him at both the plea hearing and sentencing, Defendant's decision to plead guilty was really based on Damelio's advice. *See*, Section 2255 Motion at pp. 3 ("Mr. Siguenza subsequently advised Defendant to adhere to the advice of Mr. Damelio.").

Defendant alleges, however, that Damelio's advice was defective, in that Damelio advised him to plead guilty to a charge, 18 U.S.C. § 924(c)(1)(A)(i) (possessing a firearm in furtherance of a drug trafficking crime), of which he was actually innocent. In that regard, Defendant still admits that he accepted an assault rifle in payment for cocaine, but now contends that such fact does not establish a violation of § 924(c)(1)(A) since the transfer of the cocaine and rifle did not occur simultaneously.

---

[6] Section 2255 Motion at p. 3.

Defendant further contends that Siguenza provided ineffective assistance of counsel, not only by "acting at Damelio's behest"[7] and advising Defendant to follow Damelio's advice and plead guilty to 18 U.S.C. § 924(c)(1)(A), but also by failing to advise Defendant, after the conviction, that Defendant could file an appeal even though the Plea Agreement contained a waiver of Defendant's right to appeal or collaterally attack his sentence.  Indeed, Defendant states that Siguenza affirmatively told him he could not file an appeal.[8]

Defendant also alleges that the Court violated Fed. R. Crim. P. 32(j)(1)(B) by failing to advise him that he had a right to appeal.

The Government responds that Defendant's motion, which was filed one year and five months after his conviction became final, should be denied as untimely.  In that regard, Defendant asserts that his motion is timely pursuant to 28 U.S.C. § 2255(f)(4), since

> the facts upon which Defendant's ineffective assistance of counsel claims are based were unknown to Defendant until recently, and could not have been discovered previously through the exercise of due diligence, inasmuch as such facts were hidden by means of affirmative misrepresentations by counsel and the Court.[9]

However, the Government maintains that the motion filing was precipitated not by the discovery of new facts, but by the formulation of new legal arguments and/or a failure to

---

[7] Section 2255 Motion at p. 4 (Alleging that Siguenza was retained by Damelio to "act at Mr. Damelio's behest.").

[8] Section 2255 motion at pp. 2-3 ("Counsel advised that no appeal could be taken, given the waiver of the right to appeal in the plea.").  Notably, Defendant does not allege in his motion that he wanted to file an appeal, or that he expressed that intention to Siguenza.

[9] Section 2255 Motion at p. 2.  Defendant never indicates what those exact facts are, how he learned them or when he learned them.  Rather, he makes only bald assertions.  The only such "fact" that he identifies is the fact that he could have filed an appeal, even though he had waived his right to do so. *Id.* Presumably, he views the idea that he is actually innocent of Count 2 as another such "fact."

appreciate the legal significance of previously known facts.  In particular, the Government indicates that Defendant's alleged "discovery" that he could have filed an appeal, notwithstanding the appeal waiver provision in the Plea Agreement is not a newly-discovered "fact" within the meaning of 28 U.S.C. § 2255(f)(4).   The Government also points out that Defendant actually had no legitimate right to appeal in any event, since he is attempting to attack his sentence, and he clearly waived the right to appeal or collaterally attack his sentence as part of the Plea Agreement.  That is, the Government contends that this motion is barred by the appeal/collateral attack waiver.

Alternatively, the Government contends that the motion should be denied on the merits.  In that regard, the Government indicates that Defendant's ineffective-assistance-of-counsel claim alleges three types of ineffectiveness: 1) advising Defendant to plead guilty to Count 2 when he was actually innocent of that charge; 2) failing to advise Defendant that he could file an appeal; and 3) acting under a conflict of interest.  However, the Government insists that Defendant cannot show either deficient performance or prejudice as to any of those points.  The Government argues, for example, that Defendant is not actually innocent of Count 2, despite what he may think, since to satisfy § 924(c)(1)(A)(i) based on an exchange of drugs for a firearm, there is no requirement that the exchange take place simultaneously.  The Government further maintains that defense counsel was not ineffective for failing to advise Defendant that he could file an appeal despite the appeal waiver, since there were no non-frivolous grounds for an appeal, Defendant did not indicate that he wanted to file an appeal, and an appeal would have been meritless in any event.  Further, the Government contends that Defendant's conflict-of-interest ineffectiveness claim concerning attorney Damelio lacks merit since attorney

Siguenza, who represented Defendant at the plea hearing and sentencing, had no conflict, and Defendant testified under oath that he was relying on Siguenza's advice and representation in deciding to plead guilty.

On or about February 5, 2020, Defendant filed reply papers (ECF Nos. 33, 34, 35) that generally reiterate the arguments in his motion.   Defendant reiterates, for example, that counsel and the Court misled him into thinking that he could not appeal, and that Siguenza was merely "the alter ego of former counsel."[10]   Beyond that, Defendant amplifies his arguments concerning the alleged conflict of interest by Damelio, going so far as to allege (though still without any offer of proof) that Damelio and the prosecuting Assistant United States Attorney were aware of Damelio's conflict from the start but nevertheless conspired to hide it from him.   Indeed, Defendant argues that the Government engaged in "egregious" and "outrageous conduct" by "colluding" with defense counsel, as a result of which the Court should dismiss all charges.

Defendant's reply also responds to the Government's argument concerning the untimeliness of the motion due to the inapplicability of 28 U.S.C. § 2255(f)(4).   In particular, Defendant states that it was only in mid-2019 that he learned he could file an appeal, notwithstanding his appeal waiver.[11]   Defendant maintains that he acted diligently, since he only learned this "fact" after consulting numerous jailhouse lawyers. Defendant, though, offers no insight into how or when he learned the supposed "facts" concerning Damelio's alleged plan to provided conflicted counsel to Defendant in order to benefit his other client or the Government's alleged "collusion" with Damelio.  Indeed,

---

[10] ECF No. 33 at p. 3.
[11] ECF No. 33 at pp. 2-3; *see also*, ECF No. 34 at p. 3 ("He accepted the information provided by the Court and his attorney until he learned (in August 2019) that the information provided was incorrect.").

the reply offers no evidentiary support at all for those allegations.

Then, on September 20, 2021, Defendant filed a 23-page document captioned as a "supplemental pleading." (ECF No. 48). The stated purpose of the submission is to clarify Defendant's actual innocence argument and notify the Court of "recent Circuit Court precedent" concerning that claim. As mentioned earlier, Defendant's prior submissions offered no authority to support his actual innocence claim. This proposed supplemental pleading, however, states that "[t]he Supreme Court and several lower Circuit Courts have held that, trading narcotics for a firearm did not constitute *use* of a firearm that would sustain a § 924(c) conviction." (emphasis added). In that regard, Defendant cites *Watson v. United States*, 552 U.S. 74 (2007) ("*Watson*") for the proposition that "trading narcotics in exchange for a firearm does not constitute an offense under the § 924(c) statute."[12] Defendant asserts that both of his defense attorneys were ineffective for failing to realize that he is innocent according to *Watson*.[13]

Defendant's supplemental submission also contends that his possession of the subject rifle was not "in furtherance" of a drug trafficking crime, since there is no adequate nexus. Defendant additionally asserts that the Second Circuit's decision in *United States v. Gardner*, 602 F.3d 97 (2d Cir. 2010) ("*Gardner*"), which held that trading drugs for guns satisfies § 924(c)(1)(A) (possession in furtherance), is distinguishable since he, unlike the defendant in *Gardner*, did not originally intend to receive a firearm in payment. Rather, Defendant argues that he "only accepted the firearm to forgive the $1200 debt that the individual had outstanding for the cocaine."[14] Defendant further argues that his plea and

---

[12] ECF No. 48 at p. 7.
[13] ECF No. 48 at p. 19.
[14] ECF No. 48 at p. 14.

appeal waiver were not voluntary since he was unaware at the time that he was actually innocent of Count 2, and would not have pleaded guilty if he had known.

ANALYSIS

Defendant's *Pro Se* Status

Since Defendant is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Section 2255 Principles

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).  Here, the Court finds that a full evidentiary hearing is not required because there are no material factual disputes[15] and the record conclusively shows that Defendant is not entitled to relief.  Additionally, to the extent that Defendant's papers contain a request for appointment of counsel, it is denied as unnecessary as the issues have been extensively briefed and Defendant's arguments plainly lack merit without regard to the skill of his advocacy.

---

[15] To the extent there are disputes over the events leading up to Defendant's plea, they do not warrant a hearing since they are based on mere bald assertions of conflict, collusion and actual innocence that are refuted by his prior sworn statements during his plea.

The Motion is Untimely

The Government maintains that the subject motion is untimely, and the Court agrees.  In that regard, the relevant statutory provision, 28 U.S.C. § 2255(f), states:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255(f) (West).

As mentioned earlier, Defendant acknowledges that his motion was filed far more than a year after his conviction became final.  Accordingly, the motion is not timely under 28 U.S.C. § 2255(f)(1).   Nor does Defendant contend that the motion is timely under § 2255(f)(2)-(3).

However, Defendant contends that the motion is timely under § 2255(f)(4).  More specifically, Defendant contends that he commenced this action within a year of discovering the "facts" that he was "actually innocent" of violating § 924(c)(1)(A) (possession in furtherance) and that he could have filed an appeal notwithstanding his appeal waiver.  As mentioned earlier, Defendant indicates that he learned these "facts"

by speaking to jailhouse lawyers.  These alleged facts pertain to Defendant's ineffective-assistance claims alleging that counsel incorrectly advised him to plead guilty and failed to advise him of his right to appeal.

Defendant also alleges ineffective assistance by counsel based on conflict of interest.  However, he does not allege anywhere how or when learned of the alleged facts upon which *those* claims are based, such as that Damelio represented a cooperating witness, that Damelio and the prosecutor conspired together to hide Damelio's conflict of interest, or that Damelio actually retained Siguenza.[16]  Defendant, therefore, has not shown or even alleged that he commenced this action within a year of discovering the facts upon which his conflict-of-interest claims are based.  Accordingly, those claims are clearly time-barred, since even assuming *arguendo* that his other claims were timely, he cannot use § 2255(f)(4) to revive untimely claims by joining them to claims that are timely under § 2255(f)(4). *See, e.g., Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016) ("The simple fact that Davis might have one timely claim to make under section 2255 based on a Supreme Court precedent issued years after his conviction otherwise became final does not allow him to tack on additional, otherwise untimely claims to that one timely claim."); *see also, Wright v. United States*, No. 3:13-CR-20-J-32PDB, 2018 WL 6601891, at *8 (M.D. Fla. Dec. 17, 2018) ("Petitioner's other claims concern counsel's effectiveness in connection with her decision to plead guilty or her sentencing. As such, Petitioner knew or should have known of the facts supporting those claims at the time her conviction and sentence became final. Section 2255(f)(4) therefore does not extend the statute of limitations for Petitioner's other claims.").  Consequently, the conflict-of-interest ineffective

---

[16] Indeed, Defendant does not offer any factual support whatsoever for those bare allegations.

assistance claims are dismissed as untimely.[17]

Turning back, then, to the claims involving Defendant's alleged innocence and right to appeal, the Court finds that they similarly do not fit under § 2255(f)(4), since they also are not based on "facts" discovered within a year of commencing the action. Rather, Defendant commenced this action after formulating new legal theories involving already-known facts, a situation to which § 2255(f)(4) does not apply. For example, in a case somewhat similar to this one, in which the defendant had pled guilty to a crime of which he later claimed to be innocent, the Tenth Circuit stated:

> Relying on § 2255(f)(4), Mr. Collins argues that his motion is timely filed because the limitation period should run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of reasonable diligence," here March 2009, when he discovered that his counsel was ineffective. In support of this claim, Mr. Collins explains that a 12-gauge shotgun was found in the closet of his room, which contained suspected controlled substances, chemicals and drug paraphernalia. A working methamphetamine lab was found in a shed apart from the house. According to Mr. Collins, there was an insufficient factual basis for his plea because the firearm was not in furtherance of a drug trafficking crime; he merely possessed the firearm for hunting rabbits as he told one of the agents. *See United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir.2001) ("in furtherance" element requires that the gun promote or advance unlawful drug activity).
>
> Though *Iiland* is readily distinguishable based upon its facts, *see United States v. Mitten*, 592 F.3d 767, 777-78 (7th Cir.2010), we need not go down that path.  <u>Section 2255(f)(4) speaks to discovery of facts supporting a claim, not a failure to appreciate the legal significance of those facts</u>. *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir.2000) (ignorance of the law generally will not excuse an untimely § 2255 filing). . . . [T]his case involves [the latter situation].

*United States v. Collins*, 364 F. App'x 496, 498 (10th Cir. 2010) (emphasis added, internal

---

[17] The claims also appear to lack merit, since Defendant's bald assertions concerning them are largely, if not entirely, refuted by his sworn statements at the plea hearing.

citations to record omitted); *see also, Matera v. United States*, 83 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) ("Under § 2255(f)(4), [t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.") (citations omitted).   Under the circumstances of this case, Defendant's filing of the instant motion was not timely under § 2255(f)(4).

Nor has Defendant otherwise shown that his motion should be deemed timely due to equitable tolling or actual innocence.[18] *See, e.g., United States v. Farley*, No. CR 08-0118-5 (PLF), 2018 WL 4804691, at *6 (D.D.C. Oct. 4, 2018) ("Although Mr. Farley's motion is time-barred under the plain language of the statute [(28 U.S.C. § 2255(f))], there are two potential avenues through which his Section 2255 motion could be considered on the merits: (1) equitable tolling; and (2) a credible showing of actual innocence.") (citation omitted).

For example, Defendant has not shown or alleged, nor does the record suggest, that equitable tolling applies. *See, id*. ("Equitable tolling can extend the one-year limitations period if a defendant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way that prevented timely filing.") (citations omitted).   Nor has he shown "actual innocence" under the relevant standard:

> The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But this standard is demanding: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *See id*. at 386-87 (quoting *Schlup v. Delo*, 513 U.S. 298, 329

---

[18] This is also true with regard to his conflict-of-interest ineffective assistance claim.

(1995)).

*United States v. Farley*, 2018 WL 4804691 at *6.

Here, Defendant's actual innocence argument is not based on any new evidence of factual innocence, but, rather, is based on the alleged legal insufficiency of his conviction in light of *Watson*. Consequently, the actual innocence exception to the statute of limitations does not apply:

> An allegation of actual innocence affords "'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995) ). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. This is a "severely confined category" of cases because a petitioner must submit new evidence showing "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin*, 569 U.S.at 393 (alteration in original) (internal quotation marks omitted); *see also Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 172 (2d Cir. 2000) (holding actual-innocence exception applies if defendant shows by clear and convincing evidence "that he is actually innocent of the act on which his harsher sentence was based"). The same strict standard applies to a petitioner who pleaded guilty and did not have the evidence evaluated by a jury: he or she "must show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him [or her]." *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (internal quotation marks omitted).

> Raghoonanan's reliance on *Watson v. United States* is not new evidence, let alone newly discovered evidence that clearly and convincingly establishes his factual innocence. *Cf. Spence*, 219 F.3d at 172 ("[T]he actual innocence inquiry will focus on the reliability of ... facts that make defendant eligible for a harsher sentence under his agreement with the state."). The Second Circuit has squarely held that *Watson* does not apply where the defendant, like Raghoonanan, was convicted of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(a)(c)(1)(A). *See United States v. Gardner*, 602 F.3d 97, 102 (2d Cir. 2010) (reasoning that *Gardner* was "readily distinguishable from *Watson*").

*United States v. Raghoonanan*, No. 5:12-CR-00158-CR-1, 2018 WL 1084053, at *5–6 (D. Vt. Jan. 10, 2018), report and recommendation adopted, No. 2:12-CR-158, 2018 WL 1083500 (D. Vt. Feb. 26, 2018).

Accordingly, Defendant's motion is time-barred and must be denied as such.

<u>Defendant's Actual Innocence Claim Also Fails on the Merits</u>

The Court further observes that even if Defendant's motion was timely, it would fail on the merits, since he is not actually innocent of violating § 924(c)(1)(A).  In that regard, Defendant admits that he traded cocaine for a rifle, or, more specifically, that he  accepted a rifle as payment for cocaine.  Indeed, as noted earlier, Defendant told federal agents that he had also received several other guns in the same manner.  However, he contends that the transaction involving the rifle did not amount to possession of a firearm in furtherance of a drug trafficking crime, since the exchange was not simultaneous.[19] Defendant further argues that the "drug trafficking crime" was completed when he supplied the cocaine, and not when he received the rifle some days later.[20]

As mentioned already, in Defendant's supplemental pleading he cites the Supreme Court's *Watson* decision for the proposition that "trading narcotics in exchange for a firearm does not constitute an offense under the § 924(c) statute."[21]  Defendant's reliance on *Watson*, though, is misplaced, since that case, which interpreted a prior version of § 924(c)(1)(A),[22] stands for the proposition that a defendant who trades drugs for a gun is

---

[19] Section 2255 Motion at p. 3.
[20] Section 2255 Motion at p. 3 ("There must be a contemporaneous transfer.  Here, the end-user subsequently decided to pay for the cocaine purchased and consumed with a firearm days after the distribution transaction occurred.").
[21] ECF No. 48 at p. 7.
[22] *See, Watson*, 128 S.Ct. at 585 (Observing that subsequent to Watson's conviction, § 924(c)(1)(A) had been amended, "and now prohibits not only using a firearm during and in relation to a drug trafficking crime, but also possessing one "in furtherance of" such a crime.").

not guilty of *using* a firearm in furtherance of a drug trafficking crime.[23]  The *Watson* case does not say that a defendant who trades a gun for drugs is innocent of *possessing* a firearm in furtherance of a drug trafficking crime, which, due to the amendment of the statute, is now a separate way of violating § 924(c)(1)(A), and to what Defendant pled guilty.  Indeed, the Supreme Court in *Watson* expressly declined to address whether trading drugs for a gun would amount to possession of a firearm in furtherance of a drug trafficking crime.[24]

However, the Second Circuit has subsequently held that receiving a gun in trade for drugs amounts to possession of a firearm in furtherance of a drug trafficking crime. *See, U.S. v. Gardner*, 602 F.3d 97, 99 (2d Cir. 2010) ("We hold that acquiring a firearm using drugs as payment constitutes possessing that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)."); *see also, United States v. Mahan*, 586 F.3d 1185, 1188 (9th Cir. 2009) ("Five other courts of appeals have confronted cases factually similar to this one, and all have either decided or assumed without deciding that a defendant who, like Mahan, receives firearms in exchange for drugs possesses those firearms 'in furtherance of' a drug trafficking offense.").

Moreover, to satisfy § 924(c)(1)(A), the exchange does not have to be simultaneous in order to establish the necessary nexus.  On this point, the law is clear:

> Because "[a] gun may, of course, be possessed for any of a number of purposes, some lawful, others unlawful," *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008), *abrogated on other grounds by Dean v. United States*, —— U.S. ——, 137 S. Ct. 1170, 197 L.Ed.2d 490 (2017), Section

---

[23] *Watson*, 128 S.Ct. at 586 ("[W]e hold that a person does not "use" a firearm under § 924(c)(1)(A) when he receives it in trade for drugs.").

[24] *See, Watson*, 128 S.Ct. at 585-586 ("The Government is confident that "a drug dealer who takes a firearm in exchange for his drugs generally will be subject to prosecution" under this new possession prong. Brief for United States 27; see Tr. of Oral Arg. 41 (Watson's case "could have been charged as possession")[.]  This view may or may not prevail, and we do not speak to it today[.]").

924(c)(1)(A)'s "in furtherance of" element cannot be satisfied "by relying on the generalization that any time a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006). Instead, the "in furtherance of" element requires a "specific nexus between the charged firearm and the federal drug trafficking crime." *Chavez*, 549 F.3d at 130.

*United States v. Rosario*, 792 F. App'x 76, 78 (2d Cir. 2019).  In determining whether such a nexus has been established,

"[t]he ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (internal quotation marks omitted).

*United States v. Pizzaro*, 797 F. App'x 607, 609 (2d Cir. 2020).

In *Gardner*, the Second Circuit stated that the necessary nexus exists when a defendant trades drugs for a gun, since, "it is natural to say that a person who trades drugs for guns 'possesses' the guns 'in furtherance of' the transaction." *United States v. Gardner*, 602 F.3d 97, 102 (2d Cir. 2010).   In doing so, the Circuit Court imposed no requirement that the exchange be simultaneous.  Moreover, other Courts have rejected the idea that the exchange must occur at the exact same time. *See, e.g., United States v. Mahan*, 586 F.3d at 1189 ("When a defendant accepts a gun as payment for his drugs, *his sale-and thus his crime-is incomplete until he receives possession of the firearm*. We fail to see how possession that completes a drug trafficking offense is not possession 'in furtherance of' a drug trafficking offense.") (emphasis added); *see also, United States v. Sterling*, 555 F.3d 452, 458 (5th Cir. 2009) ("Assuming that trading drugs for weapons constitutes possession in furtherance, drug traffickers cannot escape liability simply by structuring their transactions to arrange for later delivery of the firearms."); *United States*

*v. Dickerson*, 705 F.3d 683, 689 (7th Cir. 2013) ("The problem with this argument is that it cannot get around the fact that, even when a drug dealer does not come into possession of the firearm until after the drugs were distributed, it is that later possession that makes the drug transaction possible.") (citations omitted).

In sum, Defendant's claim of actual innocence based on the timing of his receipt of the rifle lacks merit.

Defendant also claims to be innocent of § 924(c)(1)(A) since, when he initially provided the cocaine to the buyer, he expected to be paid in money rather than with a firearm, though he admittedly later agreed to accept the rifle as payment.[25]   However, that argument has also been rejected by the Second Circuit. *See, Gardner*, 602 F.3d at 103 ("Whether a person who acquires a gun with drugs does so in order to obtain the gun (as Gardner and Gladden did) or to sell drugs, that person furthers the sale of the drugs by possessing the gun because, in either case, but for the possession of the gun, the sale of drugs would not have occurred.").

For these various reasons, Defendant's claim of actual innocence under Count 2 of the Information lacks merit, in addition to being untimely.[26]   Moreover, because the actual innocence claim lacks all merit, counsel was not ineffective either for advising Defendant to plead guilty to the § 924(c)(1)(A) charge or in failing to advise Defendant that he could appeal his conviction for violating that section.

<u>The Court Did Not Err in Not Informing Defendant That He Could Appeal</u>

As a final matter, the Court addresses Defendant's assertion that the Court violated

---

[25] Section 2255 Moton at p. 3.
[26] The claim is also barred by the Plea Agreement's appeal/collateral attack waiver provision, but for the sake of brevity the Court does not separately analyze that issue.

Fed. R. Crim. P.  32(j)(1)(B) by not advising him that he could appeal, even though he had agreed to waive his right to appeal.  In this regard, Defendant alleges that the Court "misrepresented" the true state of facts, thereby preventing him from appealing his conviction under Count 2, based on actual innocence.[27]  *See*, Section 2255 Motion at p. 2 ("By virtue of . . . the Court's misrepresentations, Defendant was unaware of his right to appeal.  The lack of knowledge and misinformation prevented him from taking an appeal. In fact, it was not until very recently that Defendant became aware of the fact that he could have appealed.  But for the misinformation and lack of advice from the Court, Defendant would have appealed the judgment of conviction and the sentence on Count Two (the firearm count) inasmuch as his conduct did not constitute an offense under the statute he was charged with violating (18 U.S.C. 924(c)(1)(A).").[28]

Rule 32(j)(1)(B) of the Federal Rules of Criminal Procedure, which Defendant cites, states, in pertinent part, that, "After sentencing – regardless of the defendant's plea – the court must advise the defendant of the right to appeal the conviction."  However, this rule does not apply where a defendant has knowingly, voluntarily and competently waived the right to appeal.  On this point, the United States Court of Appeals for the Second Circuit has stated:

> Under Federal Rule of Criminal Procedure 32(j)(1)(B), "[a]fter sentencing-regardless of the defendant's plea-the court must advise the defendant of any right to appeal the sentence." But "'Congress seems to have understood'"-indeed it is difficult to believe it did not understand- "'that

---

[27] Section 2255 Motion at p. 2.

[28] Defendant's motion alleges, alternatively, that the Court failed to advise him that he could appeal and affirmatively told him that he could not appeal. *See, e.g.* Section 2255 Motion at p. 1 ("Defendant was advised by the Court and counsel that no appeal could be taken."); *id.* at 2 ("[T]he Court and counsel affirmatively misrepresented to Defendant  that he could neither appeal or collaterally attack the judgment.").  In fact, though, the Court never told him "that no appeal could be taken."  *See*, Sentencing Transcript at pp. 19-20 (Observing that since the sentence was in accordance with the Plea Agreement Defendant had consented to waive his right to appeal or otherwise collaterally attack the sentence imposed, which was true.).

> **advice as to a right to appeal a sentence need be given only when such a right exists. [And a] right might not exist either because it was never created in the first place, or because it was created and then waived**.'" *United States v. Fisher*, 232 F.3d 301, 303 (2d Cir.2000) (quoting *United States v. Tang*, 214 F.3d 365, 369 (2d Cir.2000)). Indeed, *Tang* urged sentencing judges "**not** to give 'unqualified advice concerning a right to appeal'" in "cases where a waiver of appellate rights is of the type we have ruled enforceable and [said waiver] has been fully explained to the defendant at the time of the plea." *Id*. at 303 (quoting *Tang*, 214 F.3d at 370).

*United States v. Liriano-Blanco*, 510 F.3d 168, 172–73 (2d Cir. 2007) (emphasis added); *see also, Alvarez Denis v. United States*, 15-cr-632 (JGK), 2020 WL 5259346 at *6 (S.D.N.Y. Sep. 2, 2020) ("The Court fully explained th[e] appellate waiver to the petitioner at the time of the plea.  Therefore, an unqualified statement to the petitioner at the time of sentencing that he had a right to appeal would have been misleading."); *Pierre-Louis v. United States*, 20 CV 3010 (CM), 2022 WL 1186020 at *5 (S.D.N.Y. Apr. 21, 2022) ("Because Pierre-Louis waived the right to appeal his sentence of 360 months' imprisonment, the Court was not obliged to incorrectly advise him that he had a right to appeal.").

Here, when accepting Defendant's plea, the Court found that in entering into the Plea Agreement and pleading guilty, Defendant was knowingly, voluntarily and competently waiving his right to appeal or collaterally attack a sentence of 120 months or less.  Since the Court imposed the agreed-upon sentence of 120 months, Defendant waived the right to appeal, and the Court therefore had no obligation to advise him of a right to appeal.  Accordingly, Defendant's argument on that point lacks merit.

CONCLUSION

The application under 28 U.S.C. § 2255 (ECF No. 26) is denied.  Any remaining pending applications (ECF Nos. 31, 33, 35) are denied as moot.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  Finally, the Clerk of the Court is directed to close this case.

So Ordered.

Dated: Rochester, New York
       May  13, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge